**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRICIA W.,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil Action No. 24-11499 (GC)<br><br>**OPINION** |

**CASTNER, District Judge**

      **THIS MATTER** comes before the Court upon Plaintiff Tricia W.'s[1] appeal from the final decision of the Commissioner of the Social Security Administration (Commissioner[2]) denying Plaintiff's application for Social Security Disability (SSD) and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* After careful consideration of the entire record, including the entire Administrative Record, the Court decides this matter without oral argument in accordance with Federal Rule of Civil Procedure (Rule) 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, the Court **AFFIRMS** the Commissioner's final decision.

---

[1]     Plaintiff is identified by first name and last initial. *See* D.N.J. Standing Order 2021-10.

[2]     Leland Dudek became Acting Commissioner of the Social Security Administration on February 16, 2025. This change has no bearing on the instant matter. *See* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

# I.    **BACKGROUND**

## A.    **Procedural History**

Plaintiff has a college education and worked as a data entry clerk, receptionist, and household appliances salesperson.  (AR 45, 57.)[3]  On May 23, 2022, Plaintiff filed applications for SSD and SSI, alleging that she became disabled as of January 31, 2020.  (*Id.* at 69-70, 90-91, 182-183.)  Plaintiff alleged that she could not work because of a range of health conditions: "Bipolar Manic Depression, Pre-menstrual Dysphoric Disorder, Extreme Anxiety Disorder, [Post Traumatic Stress Disorder], Recovery for Alcoholism, Recovery for Eating Disorder, Asthma, Nervous Tic, Anxiety to Drive, Body Pain from [a motor vehicle accident] in 2009, [and] Severe Nut Allergy." (*Id.* at 63, 71.)  The applications were denied on November 21, 2022.  (*Id.* at 92, 96.)  Upon reconsideration, Plaintiff's claims were denied again on July 15, 2023.  (*Id.* at 106, 109.)  On July 25, 2023, Plaintiff filed a request for a hearing before an Administrative Law Judge (ALJ).  (*Id.* at 112-113.)  That hearing took place on March 7, 2024.  (*Id.* at 40.)

On March 21, 2024, the ALJ issued Plaintiff an unfavorable decision.  (*Id.* at 14.)  The ALJ concluded that even though Plaintiff could not perform past relevant work, she retained the ability to perform "other work that exists in significant numbers in the national economy."  (*Id.* at 32-33.)  Therefore, the ALJ found that Plaintiff was "not disabled under sections 216(i) and 223(d) of the Social Security Act."  (*Id.* at 33.)

---

[3]    "AR" refers to the Administrative Record, available at ECF No. 5.  This Opinion cites the internal page numbers when referring to the Administrative Record.  Page numbers for all other docket citations refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

Subsequently, Plaintiff requested a review of the ALJ's decision before the Appeals Council. (*Id.* at 179-180.) The Appeals Council denied that request on October 29, 2024. (*Id.* at 1-6.) Thus, the ALJ's decision became the Commissioner's final decision. (*Id.*)

On December 30, 2024, Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g). (ECF No. 1.) Plaintiff raises three arguments. First, Plaintiff contends that the "ALJ [f]ailed to [p]roperly [e]valuate the [m]edical [o]pinions and to [p]roperly [d]etermine [p]laintiff's Residual Functional Capacity (RFC)." (ECF No. 6 at 20.) Second, the "ALJ [f]ailed to [p]roperly [e]valuate Plaintiff's [t]estimony." (*Id.* at 33.) Third, the "ALJ [r]elied on a [f]lawed [h]ypothetical [q]uestion to the [v]ocational [e]xpert" when evaluating whether Plaintiff could perform other work. (*Id.* at 37)

## B.    The ALJ's Decision

The ALJ used the requisite five-step sequential evaluation process to determine that Plaintiff is not disabled. (AR 18-19.) *See also* 20 C.F.R. § 416.920(a)(4) (describing the five-step process).

At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2024, and "has not engaged in substantial gainful activity since January 31, 2020, the alleged onset date." (AR 19.)[4]

At step two, the ALJ found that Plaintiff "has the following severe impairments: major depressive disorder; generalized anxiety disorder; attention deficit hyperactivity disorder

---

[4]    "Substantial gainful activity is work activity that is both substantial and gainful." 20 C.F.R. § 416.972. Substantial work activity "involves doing significant physical or mental activities. [A claimant's] work may be substantial even if it is done on a part-time basis or if [the claimant] do[es] less, get[s] paid less, or ha[s] less responsibility than when [the claimant] worked before." *Id.* § 416.972(a). "Gainful work activity is work activity that [a claimant] do[es] for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." *Id.* § 416.972(b).

(ADHD); and asthma." (*Id.*) The ALJ noted that these impairments "significantly limit the ability to perform basic work activities" and thus are severe. (*Id.*) The ALJ determined that Plaintiff's other ailments, including alcohol use disorder, learning disorder, benign sebaceous cyst, hypothyroidism, otalgia, fatigue, polyarthralgia, and an eating disorder, were not severe. (*Id.* at 19-21.) The ALJ noted that he "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." (*Id.* at 21.)

At step three, the ALJ found that none of Plaintiff's impairments nor any combination of impairments met or medically equaled the severity of any of the impairments listed in the applicable regulation. (*Id.* at 21-23.) *See also* 20 C.F.R. § 416.925(a) (regulation pointing ALJs to "appendix 1 of subpart P of part 404 of this chapter").

At step four, the ALJ conducted an RFC assessment to determine whether Plaintiff could perform the requirements of her past relevant work.[5] (AR 23-31.) The ALJ concluded that Plaintiff:

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can understand, remember, and carry out simple instructions for 2-hour periods over 8-hour workdays and 40-hour workweeks; can tolerate occasional interaction with coworkers and supervisors, but cannot perform work involving the general public as a function of the job; can adapt to simple changes in workplace routine; and must avoid concentrated exposure to pulmonary irritants such as dust, gas, fumes, and poor ventilation.

(*Id.* at 23.) To arrive at this conclusion, the ALJ stated that she "considered all [of Plaintiff's] symptoms and the extent to which these symptoms can reasonably be accepted as consistent with

---

[5]    Residual functional capacity is defined as "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a).

the objective medical evidence and other evidence." (*Id.* (citing 20 C.F.R. §§ 404.1529, 416.929 and Social Security Ruling (SSR) 16-3p (Evaluation of Symptoms in Disability Claim), 2016 WL 1119029 (Mar. 16, 2016)).)    The ALJ also considered "the medical opinion(s) and prior administrative medical finding(s)." (*Id.* (citing 20 C.F.R. §§ 404.1520c, 416.920c).)

In considering Plaintiff's symptoms, the ALJ stated that she must follow a two-step process. First, the ALJ must determine whether "there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the claimant's pain or other symptoms." (*Id.*)  Second, if there is such an impairment, the ALJ stated she would then evaluate "the intensity, persistence, and limiting effects" of the symptoms "to determine the extent to which they limit the claimant's work-related activities." (*Id.*)  In making this evaluation, if Plaintiff's statements about intensity, persistence, and limiting effects "are not substantiated by objective medical evidence," the ALJ stated she must consider "other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities." (*Id.*)

Applying these standards, the ALJ reviewed Plaintiff's testimony and medical history to find step one satisfied. (*Id.* at 24-28.)  The ALJ then proceeded to step two and found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 28.) The ALJ concluded that "the claimant's mental residual functional capacity is restricted [to] understanding, remembering, and carrying out simple tasks for 2-hour periods with customary schedules and simple changes in routine, . . . no more than occasional interaction with others," and "restriction from work involving the general public." (*Id.* at 29.)

The ALJ then discussed the role that medical opinions played in her RFC assessment. (*Id.* at 29-31.)  The ALJ found the opinion of Dr. Rajesh Patel (Plaintiff's treating psychiatrist)

"partially persuasive." (*Id.* at 29.)  The ALJ found "less persuasive the opinions of the State agency medical evaluators" which found that Plaintiff's "medically determinable impairments were each nonsevere." (*Id.* at 30.)  The ALJ found the opinions of Counselor Daniel Zietchick, a Licensed Clinical Social Worker, Diplomate in Clinical Social Work, and treating therapist to Plaintiff, "not persuasive." (*Id.*)  Finally, the ALJ found the opinions of Dr. Jennifer Reimer, Plaintiff's primary care provider, to be "unpersuasive." (*Id.* at 31.)[6]

The ALJ based its RFC assessment on the above considerations and concluded that Plaintiff "is unable to perform any past relevant work." (*Id.* at 32.)  The ALJ made this conclusion based on the vocational expert's testimony, which was "consistent with the Dictionary of Occupational Titles" and "based on their professional experience." (*Id.*)

Finally, at step five, the ALJ considered whether jobs exist in the national economy that Plaintiff could perform given her age, education, work experience, and RFC results. (*Id.* at 32-33.)  Based on hypothetical questions posed by the ALJ, a vocational expert testified that Plaintiff could perform jobs such as "Marker," "Mail Sorter," or "Small [P]arts [A]ssembler," and provided estimates regarding the number of such jobs available in the economy. (*Id.* at 33.)  The ALJ determined that the vocational expert's testimony was consistent with the Dictionary of Occupational Titles. (*Id.*)  Therefore, the ALJ concluded that "the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id.*)  As a result, the ALJ concluded that the claimant was not disabled for SSD and SSI purposes. (*Id.*)

---

[6]    The ALJ also stated that she "considered the consultative examination by Francky Merlin, M.D." and "the psychiatric consultative examination by William Dennis Coffey" but did not assess either for persuasiveness because neither medical expert included an opinion statement. (*Id.* at 30-31.)

## II.    LEGAL STANDARD

### A.    Standard of Review

The Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).[7]  In conducting this review, the Court is "not permitted to re-weigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (citation omitted).  Instead, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and "supported by substantial evidence." *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citation omitted).

Substantial evidence is "defined as 'more than a mere scintilla'; it means 'such relevant evidence as a reasonable mind might accept as adequate.'" *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Evidence is not substantial "if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., [evidence] offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).   "Where the ALJ's findings of fact are supported by substantial evidence," the Court is "bound by those findings, even if [it] would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citation omitted); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Legal issues, in contrast, are subject to a plenary or de novo review. *See Hess v. Comm'r Soc. Sec.*, 931

---

[7]    The standard of judicial review is the same for SSD as it is for SSI. *Johnson v. Comm'r of Soc. Sec.*, 398 F. App'x 727, 729 n.1 (3d Cir. 2010) ("The evaluation of the disability itself . . . is the same under [the Supplemental Security Income and Social Security Disability Insurance] program[s]. . . . Likewise, the standard of review is the same.").

F.3d 198, 208 n.10 (3d Cir. 2019) ("We exercise plenary review over legal conclusions reached by the Commissioner . . . .") (quoting *Chandler*, 667 F.3d at 359).

### B.    Determining Disability

To be eligible for SSI and SSD benefits under the Social Security Act, a claimant must establish that they are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  The individual's impairment must be severe to the point that the individual cannot engage in his or her previous work or in "any other kind of substantial gainful work which exists in the national economy," *i.e.*, work that exists in significant numbers either in the region where the individual lives or in several regions of the country.  42 U.S.C. § 1382c(a)(3)(B); *Plummer*, 186 F.3d at 427-28.  A physical or mental impairment is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 1382c(a)(3)(D).  Disability determinations are made individually "based on evidence adduced at a hearing."  *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citation omitted).

### C.    Sequential Evaluation

The Social Security Administration has developed a sequential, five-step process for evaluating disability claims.  The process considers whether the claimant:

> (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or her past relevant work; and (5) is able to perform work existing in significant numbers in the national economy.

*McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f)). "The evaluation will continue through each step unless it can be determined at any point that the claimant is or is not disabled." *Rios v. Comm'r of Soc. Sec.*, 444 F. App'x 532, 534 (3d Cir. 2011) (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the ultimate burden of proof at the first four steps, at which point the burden shifts to the Commissioner at the fifth step. *See Hess*, 931 F.3d at 201 ("The burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security.") (citation omitted).

## III.    DISCUSSION

Plaintiff makes three arguments in support of her appeal. First, she argues the ALJ failed to properly evaluate the medical opinions when assessing Plaintiff's RFC. Second, Plaintiff contends that the ALJ improperly analyzed her subjective statements for the purposes of assessing her RFC. Third, she argues that the ALJ relied on a flawed hypothetical question to the vocational expert when that expert opined that Plaintiff could perform other work. On review of the ALJ's decision (*see* AR 17-34) and the Administrative Record (*see generally* ECF No. 5), the Court finds good cause to affirm the Commissioner's decision.

### A.    The ALJ's Evaluation of Medical Opinion Evidence

Plaintiff argues that the ALJ's evaluation of Dr. Patel's, Counselor Zietchick's, and Dr. Reimer's medical opinions were "fatally flawed." (ECF No. 6 at 20-33.) With respect to Dr. Patel, Plaintiff argues that even though Dr. Patel found that Plaintiff had "moderate" limitations "in her capacity to (1) maintain attention and concentration for extended periods; (2) make simple work-related decisions; (3) ask simple questions or request assistance; and (4) be aware of hazards and take appropriate precautions," the ALJ's mental RFC determination failed to include these limitations. (*Id.* at 22.) Plaintiff also argues that the ALJ erred when she rejected additional mental limitations found by Dr. Patel despite "the supportive explanations" that Dr. Patel provided. (*Id.*

at 23-24.)  With respect to Counselor Zietchick, Plaintiff similarly argues that the ALJ erred by ignoring the explanations given for his mental health limitation findings.  (*Id.*)  Finally, Plaintiff contends that the ALJ "left no path at all to explain her conclusions on the mental limitations identified by Dr. Reimer as she failed to discuss those limitations at all or indicate how they were evaluated." (*Id.* at 29.)

The Commissioner argues the ALJ properly considered the medical opinions.  First, the Commissioner argues, an ALJ need only explain how she considered the "supportability" and "consistency" factors in evaluating medical testimony.  (ECF No. 8 at 15-16.)  And even then, "the ALJ is not required to rely on a medical opinion in formulating the RFC." (*Id.* at 16.)  As applied here, the Commissioner argues the evaluations were proper because the ALJ evaluated the medical opinions for consistency and supportability and her RFC conclusions were supported by substantial evidence.  (*Id.* at 17-23.)

"When weighing medical opinions in Social Security matters, administrative law judges must *consider* a range of factors, but all they must *explain* are the reasons for their decisions." *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 638 (3d Cir. 2024) (emphasis in original). Under 20 C.F.R. § 404.1520c(a), for claims filed after March 27, 2017, an ALJ is required to consider medical opinions and determine persuasiveness of the opinions by considering specific factors listed in the regulations.  These factors include: (1) supportability; (2) consistency; (3) relationship of the medical source to the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, and extent of the treatment relationship; (4) specialization; and (5) other relevant factors. *Id.* § 404.1520c(c).  Supportability[8]

---

[8]    "Supportability" means that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)

and consistency[9] are the most important factors. *Id.* § 404.1520c(b)(2). Accordingly, an ALJ must "explain how [she] considered [these two] factors" but need not "explain how [she] considered the other factors." *Id.*

When giving this explanation, the ALJ "need not reiterate the magic words 'support' and 'consistent' for each doctor." *Zaborowski*, 115 F.4th at 639. Rather, it is sufficient for the ALJ to "weave supportability and consistency throughout her analysis of which doctors were persuasive." *Id.* And because "the regulations seek to enforce a 'source level' analysis, rather than dividing each source's opinions into different units to be separately analyzed," the ALJ need not perform a supportability and consistency analysis "with regard to every aspect of the [medical] opinion." *Pyle v. Comm'r of Soc. Sec.*, Civ. No. 23-815, 2024 WL 4278291, at *1 n.1 (W.D. Pa. Sept. 24, 2024). Further, the ALJ is not required to provide a "written analysis about how [she] considered each piece of evidence." *Joseph P. v. Comm'r of Soc. Sec.*, Civ. No. 21-13524, 2023 WL 1929945, at *5 (D.N.J. Feb. 10, 2023) (quoting *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, at 5858 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132 (Mar. 27, 2017))). Instead, "[t]he new regulations reflect a 'reasonable articulation standard'" in which the "decision need only 'allow a subsequent reviewer . . . to trace the path of an adjudicator's reasoning.'" *Id.* (quoting 82 Fed. Reg. 5844-01, at 5858). In tracing this path, "[a]n ALJ 'must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence.'" *Tedesco v. Comm'r Soc. Sec.*, 833 F. App'x 957, 961 (3d Cir. 2020)

---

or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

[9]       "Consistency" means that the "more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

(citation omitted).  But "the ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).

### 1.    *Dr. Patel*

Plaintiff's primary argument is that even though the ALJ found Dr. Patel's opinions about Plaintiff's "moderate" limitations persuasive, the ALJ did not account for those opinions in her mental RFC determination.  (ECF No. 6 at 22 (citing AR 29).)  The Commissioner argues that the ALJ's RFC did account for these limitations.  (ECF No. 8 at 17 (citing AR 23).)  And in any event, the Commissioner contends, the ALJ correctly applied the regulations.  (*Id.* at 18.)

According to the ALJ, and as the Administrative Record shows, Dr. Patel opined that Plaintiff had "no more than moderate limitations in concentration and persistence" and "moderate to marked limitations in adaptation and social functioning."  (AR 29 (citing AR 1213).)  Dr. Patel's analysis consisted of ratings along different categories of mental activities, including "Concentration and Persistence," "Adaptation," and "Social Interactions."  (*Id.* at 1213.)  Within each category, Dr. Patel evaluated sub-categories and rated Plaintiff's limitation for each sub-category as "none-to-mild," "moderate," "moderate-to-marked," and "unknown."  (*Id.*)  The ALJ based her summary of Dr. Patel's opinion on those scorings.  For example, of the nine sub-categories in the "Concentration and Persistence" category, Dr. Patel left three blank and rated Plaintiff's mental limitation as "none-to-mild" for three, "moderate" for two, and "moderate-to-marked" for one.  (*Id.*)[10]  The ALJ summarized Dr. Patel's opinion based on these sub-category

---

[10]    Moderate limitations are ones in which symptoms interfere with ability up to one-third of an 8-hour workday.  (*Id.* at 1213.)

scores: on the whole, Plaintiff had "no more than moderate limitations in concentration and persistence." (*Id.* at 29.)

As for the RFC, the ALJ wrote that she "considered the medical opinion(s)" in accordance with the relevant regulations, and found that Plaintiff had the RFC to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can understand, remember, and carry out simple instructions for 2-hour periods over 8-hour workdays and 40-hour workweeks." (*Id.* at 23.) Plaintiff takes issue with this RFC for the narrow reason that it "does not include" the sub-categories in which Dr. Patel found moderate limitations. (ECF No. 6 at 22.) For example, one of the nine "Concentration and Persistence" sub-categories is "[m]ake simple work-related decisions." (AR 1213.) Dr. Patel rated Plaintiff as having a "moderate" degree of limitation in this sub-category, (*id.*), the ALJ drew on it when summarizing the "Concentration and Persistence" category as "no more than moderate" and finding that conclusion persuasive, (*id.* at 29), yet, according to Plaintiff, the ALJ failed to incorporate this sub-category into the RFC, (ECF No. 6 at 22).

Even if the ALJ did fail to incorporate Dr. Patel's sub-category finding, Plaintiff's argument is unavailing. This is because "no rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole 'significant weight,' and an ALJ is not required to adopt all of a treating source's opinion solely because he or she found the opinion as a whole persuasive . . . ." *Sicker v. Comm'r of Soc. Sec.*, Civ. No. 23-250, 2024 WL 4199015, at *1 n.1 (W.D. Pa. Sept. 16, 2024) (quoting *Wilkinson v. Comm'r Soc. Sec.*, 558 F. App'x 254, 256 (3d Cir. 2014)). In fact, an ALJ "is under no obligation to model a residual functional capacity assessment after any medical opinion, including those deemed persuasive." *Myrick v. Dudek*, Civ. No. 23-1924, 2025 WL 1674485, at *8 (M.D. Pa. Apr.

21, 2025) (citing *Kertesz v. Crescent Hills Coal Co.*, 788 F.2d 158, 163 (3d Cir. 1986)); *see also Pyle*, 2024 WL 4278291, at *1 n.1 ("[I]t is well-established that an ALJ need not adopt every aspect of an opinion he or she has found to be persuasive.") Therefore, the ALJ was not required to adopt each of Dr. Patel's sub-category ratings into her RFC finding solely because the ALJ found Dr. Patel's opinion on the "Concentration and Persistence" category persuasive, and the ALJ was also not required to adopt Dr. Patel's opinion on the category as a whole.[11]

Plaintiff next argues that the ALJ erred when she rejected "additional mental limitations" and ignored Dr. Patel's explanations in support of those limitations. (ECF No. 6 at 23-24.) The Commissioner argues that the ALJ provided an adequate, regulatorily compliant analysis. (ECF No. 8 at 17-18.)

Based on the Court's review, the ALJ properly evaluated these mental limitations and explained their persuasiveness based on the applicable regulations. First, the ALJ wove "supportability . . . throughout her analysis." *Zaborowski*, 115 F.4th at 639. This requirement is satisfied when, for example, an ALJ "review[s] the Doctor's treatment notes and f[inds] they d[o] not support the Doctor's conclusion." *Tammy L.Z. v. Comm'r of Soc. Sec.*, Civ. No. 23-295, 2025 WL 1779229, at *2 (D.N.J. June 27, 2025).

---

[11]    To the extent Plaintiff argues that the error is the failure to *explain* why the ALJ departed from Dr. Patel's "moderate" limitations findings despite finding them persuasive, that argument similarly falters. First, it is not clear that the ALJ did deviate from this finding. (*See* ECF No. 8 at 17 (Commissioner stating that the "ALJ's RFC fully accounts for these limitations").) Plaintiff does not explain why a "moderate" limitations finding is irreconcilable with the RFC the ALJ adopted. But even if it were, Plaintiff's argument would still be unavailing. *See Myrick*, 2025 WL 1674485, at *9 ("Coupled with [the ALJ's] otherwise comprehensive discussion of the substantial evidence upon which his residual functional capacity determination relied . . . his deviation here from the limitation findings of Dr. Kneifati," which the ALJ found persuasive, "was wholly permissible and required no explanation.").

That is exactly what the ALJ did here. Dr. Patel opined that Plaintiff had "moderate to marked limitations in adaptation and social functioning" but the ALJ found that "the medical evidence d[id] not support *marked* level limitations" in these two areas. (AR 29 (emphasis added).) The ALJ found this specific opinion unpersuasive because Dr. Patel conducted "consistently benign mental status examinations." (*Id.* at 29-30.) This finding is supported by the record cited to by the ALJ. (*See id.* at 778, 784, 787, 790, 793, 797, 800, 1175, 1636, 1638-39, 1640-1641, 1643, 1645, 1647, 1649, 1651, 1653, 1655, 1657, 1659-60, 1662, 1664, 1666.) And the connection between these exam findings and the ALJ's opinion on Plaintiff's "adaptation and social functioning" limitations is apparent. (*See, e.g.*, *id.* at 1638 ("She is normal in appearance with age appropriate dress . . . ."), 1649 ("Memory is intact for recent and remote events and the patient is oriented to time, place, and person."), 1653 ("Her cognitive functioning . . . is intact and age appropriate, and she is fully oriented.").) Further, the ALJ reasoned that Dr. Patel's own notes reflected "consistent improvement" and "consistently indicated no serious abnormalities on mental status evaluation, nor signs of depression, anxiety, or attention deficits." (*Id.* at 29-30.) The cited record similarly supports the ALJ's reasoning. (*See id.* at 792, 796, 799, 1167, 1173, 1636, 1638, 1645, 1647, 1651, 1653, 1655, 1662, 1666.) Therefore, the ALJ adequately addressed the "supportability" factor and did so in a way that was supported by substantial evidence and allowed the Court to trace the ALJ's reasoning.

As for "consistency," when the ALJ "point[s] out the daylight between the [medical professional's] assessment and other evidence in the record," the ALJ fulfills her regulatory obligation. *Tammy L.Z.*, 2025 WL 1779229, at *2. Here, the ALJ wrote that "the medical evidence does not support marked level limitations in adaptation or social interaction, given the consistently benign mental status examinations." (AR 29.) While the ALJ could have been clearer about which

"mental status examinations" she was referring to, the Court can discern that "mental status examinations" refer to not only the examinations performed by Dr. Patel (which were used, in part, to fulfil the "supportability" obligation), but also to the examinations performed by Dr. Reimer (which in turn satisfy the "consistency" obligation) that are cited to earlier in the opinion. (*See, e.g., id.* at 22.)[12]  Dr. Reimer's treatment notes provide the substantial evidence needed to demonstrate the inconsistency in Dr. Patel's opinion with the record. (*See id.* at 31 (ALJ stating that Dr. Reimer's notes revealed improved mental health symptoms); *see also id.* at 1299, 1333, 1367, 1371, 1403, 1406, 1449-50, 1468, 1480.)[13]

Therefore, neither of Plaintiff's arguments—that the ALJ failed to incorporate Dr. Patel's persuasive opinions into the RFC or failed to adequately evaluate the unpersuasive opinions—is availing.

---

[12]    The ALJ provided a sufficient path for the Court to trace the ALJ's reasoning. *See Spencer S. v. Comm'r of Soc. Sec.*, Civ. No. 24-3932, 2025 WL 914409, at *5 (D.N.J. Mar. 26, 2025) ("[A] reviewing court must uphold even a decision of less than ideal clarity if the agency's path may reasonably be discerned.") (internal quotation marks omitted) (citing *Garland v. Ming Dai*, 593 U.S. 357, 368 (2021)); *see also Tammy L.Z.*, 2025 WL 1779229, at *2 n.4 (finding which evidence the ALJ was referring to "clear enough" when the ALJ "did not directly cite the medical record . . . but the [ALJ] thoroughly covered—and cited—the record earlier in [the] opinion").

[13]    To the extent Plaintiff contends that the ALJ "wholly ignored the explanations" provided by Dr. Patel, (ECF No. 6 at 24), the Court is unpersuaded. Wholly ignoring rejected explanations would be improper but an "ALJ is not required to supply a comprehensive explanation for the rejection of evidence." *Cotter*, 650 F.2d at 482. Instead, "a sentence or short paragraph" is usually sufficient. *Id.* Here, the ALJ's explanation for why she found certain of Dr. Patel's opinions unsupportable and inconsistent satisfies this threshold. *See, e.g., Twila H. v. Comm'r of Soc. Sec.*, Civ No. 24-586, 2025 WL 875796, at *6 (E.D. Pa. Mar. 19, 2025) (finding ALJ did not "total[ly] disregard" medical opinion when the "ALJ properly considered" why the medical opinion was unsupportable and inconsistent) (alteration in original). In other words, it is through the required explanation of supportability and consistency that an ALJ, like the ALJ here, adequately addresses rejected medical opinions.

### 2.    *Counselor Zietchick*

Plaintiff next argues that the ALJ erred by "wholly ignoring the explanations provided by" Counselor Zietchick.  (ECF No. 6 at 24.)  The Commissioner argues the ALJ properly considered Counselor Zietchick's opinions and provided a sufficient supportability and consistency analysis.  (ECF No. 8 at 19-20.)

Counselor Zietchick opined in a report that Plaintiff "is unable to work given her psychiatric instability"; that Plaintiff is "unable to support herself"; and that she is "dependent on her mother for survival."  (AR 30.)  The ALJ found these opinions "not persuasive" because these statements were "expressed in generalized and conclusory language."  (*Id.* (citing AR 806-807).)  And the ALJ found Counselor Zietchick's opinion—in a questionnaire "correspond[ing]" to the report—that Plaintiff had "marked limitations in understanding and memory, in concentration and persistence, in social function, and in adaptation" was contradicted by Plaintiff's "consistently benign mental status examinations" and "improvement with medication and therapy."  (*Id.* (citing treatment notes and records prepared by Dr. Patel and Dr. Reimer).)[14]

---

[14]    Counselor Zietchick also opined, in an undated letter, that Plaintiff "is unable to work, even part time, and isolates most of the ti[m]e and plays video games, and that her ability to focus, endure stress, and function is impaired."  (AR 30 (citing AR 1216).)  The ALJ found this opinion unpersuasive because it was "expressed in ambiguous language" and was inconsistent with the record.  (*Id.* at 30.)  This is sufficient for reasons described *infra*.  But even if it were not, any error would be harmless because an undated, one-page letter has little bearing on Plaintiff's RFC. *See Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004) (affirming when ALJ "failed to discuss, or even mention," evidence that was not "particularly notable"); *Pipkin v. Kijakazi*, Civ. No. 22-2, 2023 WL 411291, at *1 n.2 (W.D. Pa. Jan. 25, 2023) (finding harmless error when ALJ failed to provide supportability analysis of medical opinion but the record demonstrated that the opinion was "unaccompanied by supporting evidence or explanations").  This is especially the case given that the thrust of the ALJ's decision was that Plaintiff's mental health improved over time.  (*See, e.g.*, AR 30-31.)

The Court finds the ALJ's analysis sufficient. The ALJ wove supportability into her analysis in reasoning that the report by Counselor Zietchick—in which he found Plaintiff could not work—was conclusory. (*Id.* at 30; *see also id.* at 806-807.) In other words, the report did not provide any evidence or expand upon his finding in any meaningful way other than to cite to his handwritten notes that were illegible.[15] *Cf. Lizette D. v. Comm'r of Soc. Sec.*, No. 22-cv-05166, 2023 WL 6121498, at *5, *15-17 (D.N.J. Sept. 18, 2023) (affirming ALJ's decision rejecting licensed clinical social worker's "vague" mental health opinion). The ALJ wove consistency into her analysis in explaining that Counselor Zietchick's opinion on "marked limitations" was inconsistent with examinations conducted by Plaintiff's other medical care providers. (*Id.* at 30 (citing Dr. Patel's examination records (*id.* at 778, 784, 787, 790, 793, 797, 800, 1175, 1636, 1638-39, 1640-41, 1643, 1645, 1647, 1649, 1651, 1653, 1655, 1657, 1659-60, 1662, 1664, 1666) and Dr. Reimer's examination records (*id.* at 1299, 1333, 1367, 1371, 1403, 1406, 1449-50, 1468, 1480)).) Similar to Dr. Patel, the ALJ's analysis was sufficient. *See Tammy L.Z.*, 2025 WL 1779229, at *2. Therefore, the ALJ's evaluation of Counselor Zietchick's opinions was proper.[16]

### 3.    Dr. Reimer

Dr. Reimer opined that Plaintiff "was restricted to standing/walking and sitting for less than 1 hour each in an 8-hour workday due to mental health issues, would be absent more than three

---

[15]    Most of Counselor Zietchick's notes are illegible, as the ALJ and Commissioner concede. (*See* AR 26; ECF No. 8. at 12.). However, remand is not "required every time a provider's notes are illegible." *Maximiliano L. v. Kijakazi*, Civ No. 21-0083, 2022 WL 4550631, at *10 (D.N.J. Sept 29, 2022) (finding remand appropriate when "the ALJ purported to understand all of the mostly illegible treatment notes—and cherry-picked from those notes"). Here, nothing in the record suggests the ALJ purported to rely on notes which she otherwise found were illegible, nor did she cherry pick from the notes she could decipher. (*See* AR 30.)

[16]    Plaintiff also argues that the ALJ erred because she failed to consider that Counselor Zietchick's opinion was consistent with Dr. Patel's and with the treatment record. (ECF No. 6 at 26.) This argument is unavailing because an ALJ need not "discuss the extent to which a particular medical opinion is consistent with every piece of the record." *Tammy L.Z.*, 2025 WL 1779229, at

days per month, had manipulative limitations, and other restrictions." (AR 31.) The ALJ explained that this opinion was "contrasted by the medical evidence." (*Id.*) The evidence, the ALJ elaborated, "does not show any impairment with limiting effects on manipulation, nor supports the extent of exertional limitation opined, considering that physical examinations were consistently unremarkable across the longitudinal treatment course . . . ." (*Id.*) And Plaintiff "consistently reported in primary care that she regularly exercised nearly daily, . . . had improved mental health symptoms with treatment," and "the medical record does not reference physical limitations resulting from mental impairments." (*Id.*)

Plaintiff argues that the ALJ erred because she focused on Plaintiff's supposed physical limitations but "gave no reasons for discounting any of the mental restrictions described by" Dr. Reimer. (ECF No. 6 at 29.) The Commissioner responds that it is not fatal that the ALJ "primarily focused on the unpersuasive assessed physical limitations" because "an ALJ is not required to make a written evaluation of each piece of evidence or testimony" and, in any event, "it is abundantly clear why the ALJ found Dr. Reimer's entire opinion, including her assessed mental functional limitations, unpersuasive." (ECF No. 8 at 22.)

Here, the ALJ complied with the regulations and substantial evidence supports her treatment of Dr. Reimer's opinion. The Commissioner is correct that the ALJ was not required to provide a "written analysis about how [she] considered each piece of evidence." *Joseph P.*, 2023 WL 1929945, at *5 (quoting 82 Fed. Reg. 5844-01, at 5858). And, regardless, her analysis of Dr. Reimer's mental restrictions findings was proper. The ALJ drew on Dr. Reimer's own notes to

---

*3 (internal quotation marks omitted); *see also Freedline v. Kijakazi*, Civ. No. 21-405, 2022 WL 4464955, at *1 n.3 (W.D. Pa. Sept. 26, 2022) ("Insofar as these opinions are consistent with one another . . . the Court does not fault the ALJ for not specifically calling out that consistency in the decision.").

find they did not support her conclusion.  (*See* AR 1299, 1333, 1367, 1371, 1403, 1406, 1449-50, 1468, 1480.)[17]  The ALJ's consistency analysis was based on "the medical evidence." (*Id.* at 31)  This medical evidence includes Dr. Patel's findings of no gross abnormalities, and it was reasonable enough to conclude that this evidence contradicted Dr. Reimer's mental health opinions. (*See id.* at 778, 784, 787, 790, 793, 797, 800, 1175, 1636, 1638-39, 1640-41, 1643, 1645, 1647, 1649, 1651, 1653, 1655, 1657, 1659-60, 1662, 1664, 1666.)[18]  Therefore, the ALJ's evaluation was proper.

### B.    The ALJ's Evaluation of Plaintiff's Testimony

Plaintiff next argues that the ALJ failed to properly evaluate Plaintiff's testimony.  (ECF No. 6 at 33-37.)  Plaintiff contends that the ALJ's finding—that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were inconsistent with the medical evidence—is not supported by substantial evidence.  (*Id.* at 34-35.)  Plaintiff argues that the ALJ's findings were not supported by substantial evidence because the ALJ improperly discounted medical opinions,[19] an ALJ cannot rely solely on the medical evidence for making its finding, and the only other evidence that the ALJ relied on—the notion that Plaintiff was "independent in

---

[17]    The ALJ explicitly cited Exhibit 15 of the Administrative Record, which refers to one set of Dr. Reimer's treatment records.  (*See* AR 31 (citing AR 1629-1635).)  However, the Court can deduce that when the ALJ found "Dr. Reimer's opinion is contrasted by the medical evidence," (*id.* at 31), that evidence also included Exhibit 12F of the Administrative Record, which refers to a separate set of Dr. Reimer's treatment records that were explicitly cited to earlier in the ALJ's opinion, (*see, e.g., id.* at 22, 30.)  Explicitly citing to Exhibit 12F in the portion of the decision evaluating Dr. Reimer's opinion would have provided greater clarity, but the ALJ was not required to do so.  *See Tammy L.Z.*, 2025 WL 1779229, at *2 n.4.

[18]    Here, too, the ALJ did not cite specific Exhibits but she "thoroughly covered—and cited" them "earlier in h[er] opinion," so the ALJ's line of reasoning is again "clear enough." *Tammy L.Z.*, 2025 WL 1779229, at *2 n.4.

[19]    This argument is without merit.  *See supra* Section III.A.

personal care" and could engage in activities such as writing, reading, playing video games, socializing online, and using a computer—was insufficient.  (*Id.* at 35-37.)

The Commissioner argues the ALJ did properly evaluate Plaintiff's testimony, and her conclusion was supported by substantial evidence.  (ECF No. 8 at 23-25.)  The ALJ's evaluation was proper, the Commissioner contends, because the objective medical evidence, Plaintiff's treatment history, and Plaintiff's documented daily activities provided the requisite substantial evidence under the applicable regulations.  (*Id.*)

When "an individual alleges impairment-related symptoms," ALJs "must evaluate those symptoms using a two-step process."  SSR 16-3p, 2016 WL 1119029, at *2.  First, ALJ's "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain."  *Id.*  "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [ALJ's must] evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities."  *Id.*

When evaluating the intensity and persistence of the symptoms, the ALJ must "consider all of the evidence in an individual's record."  *Id.*  An ALJ must "not evaluate an individual's symptoms based solely on objective medical evidence unless that objective medical evidence supports a finding that the individual is disabled."  *Id.* at *4.  If an ALJ "cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then [the ALJ must] carefully consider other evidence in the record" including "statements from the individual, medical sources, and any other sources that might have information about the individual's symptoms."  *Id.* at *5.  "[M]edical sources"—distinct from "objective medical

evidence"—may provide "[i]mportant information about symptoms" including "[o]nset, description of the character and location of the symptoms, precipitating and aggravating factors, frequency and duration, change over a period of time (e.g., whether worsening, improving, or static), and daily activities." *Id.* at *6; *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (listing similar factors to consider).

In her decision, the ALJ must "explain which of an individual's symptoms [she] found consistent or inconsistent with the evidence . . . and how [her] evaluation of the individual's symptoms led to [her] conclusions." SSR 16-3p, 2016 WL 1119029, at *8. "[I]t is not sufficient for [ALJs] to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered.'" *Id.* at *9. Instead, the decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*

Here, the Court agrees with the Commissioner that the ALJ followed the applicable regulations, and her findings were based on substantial evidence in the record. The ALJ first found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 28.) Proceeding to step two, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*) Plaintiff alleged that she could not work because of "depression, anxiety, mania, and mental health issues" and that she had "problems with memory and concentration . . . ." (*Id.*) But the ALJ "explain[ed] which of an individual's symptoms [she] found consistent or inconsistent with the evidence" and articulated "how [her] evaluation of the individual's symptoms led to [her] conclusions." SSR 16-3p, 2016

22

WL 1119029, at *8. She thoroughly walked through the medical evidence—including psychiatry records, mental status exams, prescriptions, and treatment notes—which revealed "consistent improvement and mood stability" and "normal . . . mental status and noted stable mental health conditions." (AR 28-29.) Based on these considerations, the ALJ found that "the medical evidence supports fewer mental limitations than alleged." (*Id.* at 29.) And her evaluation was substantiated by the evidence in the record. (*See id.* at 792, 796, 799, 1167, 1173, 1636, 1638, 1645, 1647, 1651, 1653, 1655, 1662, 1666.)[20]

And in any event, the ALJ substantiated her finding further by pointing to Plaintiff's "report[s] that she is independent in personal care, uses a computer, and spends time writing, reading, playing video games, [and] socializing online." (*Id.* at 29 (citing, *e.g.*, AR 247-250, 285, 1120).) The ALJ relied on these activities in conjunction with the other evidence, and courts have affirmed ALJ decisions based on similar analyses. *See, e.g., Heather v. Dudek*, Civ. No. 23-2239, 2025 WL 834750, at *14 (E.D. Pa. Mar. 17, 2025) (affirming the ALJ's decision when "[p]laintiff's daily activities were only one of several bases for the ALJ's determination regarding [p]laintiff's subjective complaints" and "the ALJ clearly focused on the treatment notes, [p]laintiff's response to treatment, and the medical opinions in determining that [p]laintiff's complaints were inconsistent with the record evidence"); *Vargas v. Saul*, Civ. No. 18-2936, 2020 WL 3287032, at *4 (E.D. Pa. June 18, 2020) (finding no error when "the ALJ did not hold [p]laintiff's daily activities up as the sole evidence in discounting his subjective statements[, but rather] considered them in conjunction

---

[20]     Plaintiff's suggestion that the Commissioner relied solely on "objective medical evidence" in violation of the regulations, (ECF No. 6 at 35), is without merit because SSR 16-3p outlines that "medical reports" and "treatment" notes—like the ones relied by the ALJ—constitute "[o]ther evidence" separate from "objective medical evidence." *See* SSR 16-3p, 2016 WL 1119029, at *4-6; *see also* 20 C.F.R. § 404.1529(c)(2)-(3) (differentiating "objective medical evidence" from "information that [] medical sources . . . provide about [an individual's] pain").

with other evidence tending to show that [the plaintiff] was not as functionally limited as he contended"). In short, the ALJ complied with the regulations and her conclusion that Plaintiff's subjective complaints were not consistent with the record is supported by substantial evidence.

### C.    The ALJ's Reliance on the Vocational Expert

Finally, Plaintiff argues that the ALJ's step-five analysis was improper because the ALJ based her finding on the vocational expert's flawed testimony. (ECF No. 6 at 37-40.) Plaintiff contends that the vocational expert's testimony was premised on a hypothetical question that "failed to include all the mental limitations [the ALJ] ultimately found for" Plaintiff. (*Id.* at 38.) In particular, the ALJ conceded that Plaintiff had moderate limitations in "concentrating, persisting, or maintaining pace" but failed to instruct the expert on these limitations. (*Id.*) [21]

The Commissioner responds that the mental limitations not included in the hypothetical question were ones "used to rate the severity of the claimant's mental impairments at steps two and three of the sequential evaluation process" rather than ones that formed part of the step-four RFC assessment. (ECF No. 8 at 26-27.) These limitations, the Commissioner argues, "need not be transcribed verbatim in the [RFC] and corresponding hypothetical questioning of the vocational expert." (*Id.* at 27.)

"Testimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). "Usually, the ALJ will ask whether a hypothetical claimant with the same physical and mental impairments as the claimant can perform certain jobs that exist in the national economy." *Zirnask v. Colvin*, 777 F.3d

---

[21]    Plaintiff also argues that the hypothetical was flawed because it was based on an RFC that was unsupported by substantial evidence. (ECF No. 6 at 38.) This argument is without merit. *See supra* Sections III.A-.B.

607, 614 (3d Cir. 2014) (citation omitted). "The hypothetical must accurately portray any impairments of the claimant." *Id.* (internal quotation marks and citation omitted). "[T]o accurately portray a claimant's impairments, the ALJ must include all '*credibly established limitations*' in the hypothetical." *Id.* (emphasis in original) (citation omitted); *see also Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) ("We do not require an ALJ to submit to the vocational expert every impairment *alleged* by a claimant.") (emphasis in original). The "functional limitation findings at steps two and three" do not require specific "incantations . . . at steps four and five," but "those findings are relevant to that statement of the limitation" made to the vocational expert. *Hess*, 931 F.3d at 208-10.[22] To be considered sufficiently included, the ALJ need not relay "a *verbatim* recitation of the findings" in the hypothetical to the vocational expert but must ensure the limitations are "*adequately conveyed*." *Ramirez v. Barnhart*, 372 F.3d 546, 552 n.2 (3d Cir. 2004) (emphasis in original); *see also Hess*, 931 F.3d at 210.

The Third Circuit in *Hess* applied these principles to a nearly identical situation to the instant matter. In *Hess*, the ALJ found the claimant had "moderate difficulties" in "concentration, persistence or pace" at step three. *Id.* at 208. The issue was whether the hypothetical question posed to the vocational expert at step five, which was based on the RFC finding at step four, was permissible when the ALJ did not explicitly reference the step three finding and stated that Hess was limited to "jobs requiring understanding, remembering, and carrying out only simple instructions and making only simple work related decisions." *Id.* In other words, the issue was

---

[22]  The *Hess* Court elaborated on the interplay between the two. The earlier and later "portions of the disability analysis serve distinct purposes and may be expressed in different ways." 931 F.3d at 209. The functional limitation categories are "used to rate the severity of mental impairment." *Id.* (citation omitted). By contrast, "the RFC is a determination of the most [a claimant] can still do despite [his] limitations." *Id.* (internal quotation marks and citations omitted). The two are "obviously related," but "unlike the findings at steps two and three, the RFC must be expressed in terms of work-related functions." *Id.* (internal quotation marks omitted).

"whether a 'simple tasks' limitation, like the one stated by the ALJ here, c[ould] be said to fairly reflect a claimant's impairments when that claimant ha[d] been found to face 'moderate' difficulties in 'concentration, persistence, or pace.'" *Id.* at 210. The court found that a "simple tasks" limitation would "fairly reflect" a moderate difficulty in "concentration, persistence or pace" finding so long as the ALJ offered a "valid explanation." *Id.* at 211. Whether an ALJ offered such an explanation, the court reasoned, is a "fact-specific" inquiry. *Id.* at 212. The explanation is necessary to make clear why the difficulties in "concentration, persistence, or pace" are not "so serious that [a claimant] cannot satisfy the functional requirements of 'simple tasks.'" *Id.* at 213.

The *Hess* Court found the ALJ offered a valid explanation. Even though the ALJ did not "explicitly include" her "concentration, persistence, or pace" finding in the RFC assessment or hypothetical questions, the decision explained "at length and with sound reasoning why Hess's 'moderate' difficulties in 'concentration, persistence, or pace' were not so significant that Hess was incapable of performing 'simple tasks.'" *Id.* at 213. The ALJ highlighted, among other things, "mental status examinations and reports that revealed that Hess could function effectively; opinion evidence showing that Hess could do simple work; and Hess's activities of daily living, which demonstrated that he is capable of engaging in a diverse array of 'simple tasks.'" *Id.* at 214.

In the instant matter, the hypothetical question was proper. Like in *Hess*, in the early stages of the five-step sequence the ALJ found that Plaintiff had "moderate" difficulties in "concentration, persistence, or maintaining pace." (AR 22.) And, just as in *Hess*, the ALJ did not explicitly reference this finding in its RFC analysis but articulated a "simple tasks" limitation at step four. (*Id.* at 23 ("[C]laimant can understand, remember, and carry out simple instructions for 2-hour periods over 8-hour workdays . . . ."), 29 ("[C]laimant's mental residual functional capacity is restricted [to] understanding, remembering, and carrying out simple tasks for 2-hour periods with

customary schedules and simple changes in routine . . . .").)[23]  This limitation formed the basis for the hypothetical question posed to the vocational expert at step five.  (*Compare id.* at 23, 28, *with* AR 57-58.)

The ALJ offered a "valid explanation" for the "simple tasks" instruction.  Like in *Hess*, the ALJ did not explicitly include her "concentration, persistence, or pace" finding in her RFC assessment.  But, just as in *Hess*, when the ALJ formulated her RFC—on which the hypothetical questions were based—she pointed to, among other things, mental status examinations and reports which revealed Plaintiff's "normal" functioning and participation in daily activities which demonstrated that Plaintiff could complete "simple tasks" like preparing meals for herself, going to the gym, and assisting with "some household tasks."  (*Id.* at 22.)  Indeed, the ALJ discussed these facts in the very next paragraph after she stated that Plaintiff had a moderate limitation in "concentrating, persistence, or pace."  (*Id.*)  Further, in the step-four discussion, the ALJ discussed Plaintiff's mood improvement, mental health stability, and daily hour-long gym attendance, and she reiterated that Plaintiff writes, reads, plays video games, and socializes online.  (*Id.* at 25-29.)  *See Hess*, 931 F.3d at 214 (approving ALJ analysis that was partially "coupled with [the ALJ's] finding that Hess had 'moderate difficulties' in 'concentration, persistence or pace'" but also partially took place "at step four of the disability analysis").  Therefore, under *Hess*, the ALJ provided a valid explanation for why she provided a "simple tasks" instruction despite finding moderate limitations in "concentration, pace, or persistence."  Because the "simple tasks" instruction was appropriate, the hypothetical based on that instruction was proper and so, too, was the ALJ's reliance on the answer to that hypothetical.

---

[23]    The parties do not contest that these limitations constitute "simple task" instructions, so the Court treats them as such.  (*See* ECF No. 6 at 38-40; ECF No. 8 at 27-28.)  *See also Hess*, 931 F.3d at 210-11 (defining similar statements in ALJ decisions as "simple task" instructions).

## IV.    <u>**CONCLUSION**</u>

For the foregoing reasons, and other good cause shown, the Commissioner's final decision is **AFFIRMED**.  An appropriate Order follows.


Dated:  October 30, 2025

_Georgette Castner_
_____
**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**